UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| KURT BENSHOOF, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> DAVID S. KEENAN, <br><br> Defendant - Appellee. | No. 25-786 <br><br> DECLARATION OF SANTIAGO VIOLA VILLANUEVA IN SUPPORT OF RESPONSE TO MOTION TO REOPEN APPEAL |

I, Santiago Viola Villanueva, declare as follows:

1. I am over the age of 18 and I am competent to testify as to the matters stated herein.  I represent Defendant David S. Keenan in this case.

2. Attached as **Exhibit 1** is a true and correct copy of the order dismissing case 2:24-00382-JNW issued on September 1, 2025.

3. Attached as **Exhibit 2** is a true and correct copy of the Order Declaring Plaintiff Benshoof a Vexatious Litigant issued on February 11, 2025, in case 2:23-cv-01392-JNW.

I declare under penalty of perjury under the laws of the United States of America and the State of Washington that the foregoing is true and correct.

Signed this 11th day of September, 2025 at Seattle, Washington.

_____
Santiago Viola Villanueva

# Exhibit 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KURT BENSHOOF,

    Plaintiff,

   v.

DAVID S. KEENAN,

    Defendant.

CASE NO. 2:24-cv-382

ORDER

## 1. INTRODUCTION

This matter comes before the Court on Plaintiff Kurt Benshoof's motions to stay, Dkt. Nos. 25, 28, 30, and Defendant King County Superior Court Judge David Keenan's motion to dismiss, Dkt. No. 39. Because Benshoof fails to establish a need for the requested stay and because judicial immunity blocks his sole cause of action, the Court GRANTS Judge Keenan's motion to dismiss and DISMISSES this case.

## 2. BACKGROUND

The Court accepts all facts as true from the complaint and construes them in the light most favorable to Benshoof. Fed. R. Civ. P. Rule 12(b)(6).

**ORDER** - 1

1    Benshoof alleges that Judge Keenan "facilitated" perjury in a parentage

2  action between him and the mother of his child, King County Superior Case No. 21-

3  5-00680-6 SEA. Dkt. No. 20 ¶ 8. Benshoof also alleges that he "took to social media

4  with his questions and concerns" about Judge Keenan's "judicial misconduct." *Id.* ¶¶

5  11–13. Beginning in January 2023, Benshoof "posed questions to [Judge Keenan] on

6  [his] Twitter account: @JudgeDaveKeenan[.]" *Id.* ¶ 12. On February 10, 2023, Judge

7  Keenan blocked Benshoof's Twitter account. *Id.* ¶ 13. Benshoof also posted

8  "questions and comments" about Judge Keenan's alleged "judicial misconduct" on

9  Judge Keenan's Facebook page. *Id.* ¶¶ 15–16. And then Judge Keenan blocked

10  Benshoof from viewing his Facebook page. *Id.* Benshoof then began posting

11  "questions and comments" about "judicial misconduct" to Judge Keenan's Twitter

12  account via a new handle: @Altar_Igor. Judge Keenan also blocked this Twitter

13  account in October 2023. *Id.* ¶¶ 17–18.

14    Benshoof brings one cause of action under 42 U.S.C. § 1983—he claims that

15  Judge Keenan violated his First Amendment rights by blocking him from

16  commenting on, posting to, and even viewing Judge Keenan's social media accounts.

17  *Id.* ¶¶ 19–31. Benshoof seeks an "order declaring that all of [Judge Keenan's] acts or

18  omissions, described [in Benshoof's complaint] violated the First Amendment to the

19  United States Constitution" as well as compensatory and punitive damages. *Id.* at

20  7–8. He sues Judge Keenan in "his official and individual capacity[.]" *Id.* ¶ 5.

21

22

23

**ORDER** - 2

1

# 3.  DISCUSSION

2

## 3.1    Legal standard.

3

The Court will grant a Rule 12(b)(6) motion to dismiss only if the complaint

4

fails to allege "enough facts to state a claim to relief that is plausible on its face."

5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility

6

when the plaintiff pleads factual content that allows the court to draw the

7

reasonable inference that the defendant is liable for the misconduct alleged."

8

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility

9

standard is less than probability, "but it asks for more than a sheer possibility" that

10

a defendant did something wrong. *Id.* (citations omitted). "Where a complaint

11

pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

12

the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting

13

*Twombly*, 550 U.S. at 557). In other words, a plaintiff must have pled "more than an

14

unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

15

When considering a motion to dismiss, the Court accepts factual allegations

16

pled in the complaint as true and construes them in the light most favorable to the

17

plaintiff. *Lund v. Cowan*, 5 F.4th 964, 968 (9th Cir. 2021). But courts "do not

18

assume the truth of legal conclusions merely because they are cast in the form of

19

factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations

20

omitted). Thus, "conclusory allegations of law and unwarranted inferences are

21

insufficient to defeat a motion to dismiss." *Id.* (internal quotation marks omitted).

22

23

**ORDER** - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Pro se pleadings, such as the complaint here, are to be liberally construed on a motion to dismiss. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (while *Twombly-Iqbal* imposed a "higher" plausibility standard, they did not alter courts' obligation to construe pro se complaints "liberally when evaluating them under *Iqbal*").

### 3.2     Benshoof's claim against Judge Keenan "in his official capacity" is barred by sovereign immunity under the Eleventh Amendment.

Benshoof sues Judge Keenan in his official and personal capacities for compensatory and punitive damages, as well as for declaratory relief. The Court starts with Benshoof's "official capacity" claim.

Official-capacity claims against state officials are, at their core, claims against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("We emphasized that official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) ("[The court] treat[s] [the plaintiff's] suit against state officials in their official capacities as a suit against the state of California"). As a result, Benshoof's claim against Judge Keenan in his official capacity is effectively a claim against King County Superior Court.

King County Superior Court is an arm of the state. *See Simmons v. Sacramento Cnty. Superior Ct.*, 318 F.3d 1156, 1161 (9th 2003) (finding that Sacramento County Superior Court and its employees are arms of the state for Eleventh Amendment purposes); *see also Penry v. Thurston Cnty.*, 89 F. App'x 619, 620 (9th Cir. 2004) (holding that Thurston County Superior Court is entitled to

**ORDER** - 4

Eleventh Amendment immunity as an arm of the state); *Robinson v. Pierce Cnty. Superior Ct.*, No. C24-5649-JCC-SKV, 2024 WL 4350401, at *1 (W.D. Wash. Sept. 3, 2024), *report and recommendation adopted*, No. C24-5649-JCC-SKV, 2024 WL 4349600 (W.D. Wash. Sept. 30, 2024) (holding that "Pierce County Superior Court is a state agency as it was established by the Washington State Constitution and is funded by the state government."); *Freeman v. King Cnty. Superior Ct.*, No. C12-1006-JCC, 2012 WL 12541836, at *2 (W.D. Wash. Nov. 20, 2012) (finding that King County Superior Court as an entity (and its employees) are arms of the state of Washington protected by the Eleventh Amendment). But with limited exceptions, the Eleventh Amendment to the United States Constitution bars lawsuits by a citizen against a state. *Simmons*, 318 F.3d at 1161 (9th Cir. 2003) ("Plaintiff cannot state a claim against the Sacramento County Superior Court (or its employees), because such suits are barred by the Eleventh Amendment."); *see Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) ("[S]tate officials sued in their official capacities, . . . are not 'persons' within the meaning of § 1983 and are therefore generally entitled to Eleventh Amendment immunity.").

One exception to this general rule exists: "when sued for *prospective injunctive* relief, a state official in [their] official capacity is considered a 'person' for § 1983 purposes." *Malone v. Washington*, No. 19-5574 RJB-JRC, 2020 WL 5817066, at *3 (W.D. Wash. Sept. 30, 2020) (emphasis in original) (quoting *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997)). This is part of the *Ex parte Young* doctrine. *Doe,* 131 F.3d at 839 ("In what has become known as part of *the Ex parte Young* doctrine, *see Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714

**ORDER** - 5

1     (1908), a suit for prospective injunctive relief provides a narrow, but well-

2     established, exception to Eleventh Amendment immunity.").

3          However, the exception is limited when applied to judges because "Section

4     1983 expressly immunizes judicial officers from injunctive relief for actions taken in

5     their judicial capacity 'unless a declaratory decree was violated or declaratory relief

6     was unavailable.'" *Kamath v. Barmann*, No. 1:23-CV-00461 JLT CDB, 2024 WL

7     2132607, at *7 (E.D. Cal. May 13, 2024) (quoting 42 U.S.C. § 1983); *see also Munoz*

8     *v. Superior Ct. of Los Angeles Cnty.*, 91 F.4th 977, 981 (9th Cir. 2024) ("§ 1983's

9     plain text provides 'judicial immunity from suit for injunctive relief for acts taken in

10    a judicial capacity.'") (quoting *Wolfe v. Strankman*, 392 F.3d 358, 366 (9th Cir.

11    2004)).

12         This exception does not apply here. Nothing in the complaint indicates that a

13    "declaratory decree was violated or that declaratory relief was unavailable" to

14    Benshoof. On this latter point, the alleged errors and resulting harm underlying

15    Benshoof's Section 1983 claim arise from Judge Keenan's handling of Benshoof's

16    family law case. Dkt. No. 20 ¶ 8 ("In October 2022, Defendant allowed, enabled, and

17    facilitated family law attorney Nathan L. Cliber's subornation of Jessica R. Owen's

18    perjury in King County Superior Court case no. 21-5-00680-6 SEA."). In the usual

19    case, "declaratory relief against a judge for actions taken within his or her judicial

20    capacity is ordinary available by appealing the judge's order." *Agbannaoag v.*

21    *Honorable Judges of Cir. Ct. of First Cir. of Hawaii*, No. CIV. 13-00205 BMK, 2013

22    WL 5325053, at *3 (D. Haw. Sept. 20, 2013) (quoting *La Scalia v. Driscoll*, No. 10-

23    CV-5007, 2012 WL 1041456, at *7 (E.D.N.Y. Mar. 26, 2012)). While it is unclear

**ORDER** - 6

1    from the complaint whether Benshoof appealed Judge Keenan's rulings, the facts

2    alleged suggest that such relief was available to him in state court.

3        In any event, the declaratory relief that Benshoof seeks here—"[a]n order

4    declaring that all of Defendants' acts or omissions . . . violated the First Amendment

5    to the United States Constitution"— is not *prospective* in nature. Dkt. No. 20 at 7.

6    Benshoof's use of the past-tense makes clear that he objects to Judge Keenan's prior

7    conduct. *See Rothenberg v. Stone*, 234 F. Supp. 2d 217, 222 (E.D.N.Y. 2002) ("The

8    Eleventh Amendment and the principles governing the issuance of declaratory

9    judgments prohibit the award of a declaration that state officials' prior conduct

10   violated federal law.") (citing *Green v. Mansour*, 474 U.S. 64, 65–66, (1985)).

11       Accordingly, the Court DISMISSES with prejudice Benshoof's claim against

12   Judge Keenan in his official capacity as barred by the Eleventh Amendment.

### 3.3    Benshoof cannot maintain a claim against Judge Keenan "in his personal capacity" because he is judicially immune.

15       Because the Eleventh Amendment does not "bar claims for damages against

16   state officials in their *personal* capacities[,]" the Court turns to Benshoof's Section

17   1983 claim against Judge Keenan in his personal capacity. *Mitchell v. Washington*,

18   818 F.3d 436, 442 (9th Cir. 2016) (emphasis in original).

19       Individual or personal-capacity suits seek to impose personal liability upon a

20   government official for wrongful actions made under color of law "and that were

21   taken in [the] course of [their] official duties." *Pistor v. Garcia*, 791 F.3d 1104, 1112

22   (9th Cir. 2015). Benshoof alleges that Judge Keenan acted under "color of law" when

23   he blocked Benshoof from his social media accounts. Dkt. No. 20 ¶ 21. In social

**ORDER** - 7

1    media cases, determining state action can be a close call. *Lindke v. Freed*, 601 U.S.

2    187, 197 (2024) (establishing a two-part test for analyzing whether a public officials

3    social media activity constitutes "state action" under § 1983; cautioning that when

4    categorizing conduct, "[a] close look is definitely necessary in the context of a public

5    official using social media."). Judge Keenan appears to concede this point, however,

6    as he does not argue whether his alleged conduct constitutes state action. *See*

7    *generally* Dkt. No. 39. Given that Judge Keenan doesn't put up a fight on this issue,

8    the Court assumes without deciding for this Order that his social-media activities

9    constitute state action under § 1983.

10        "It is well settled that judges are generally immune from suit for money

11    damages." *Lund v. Cowan*, 5 F.4th 964, 970 (9th Cir. 2021) (quoting *Duvall v. Cnty.*

12    *of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001)). "A judge loses absolute immunity

13    only when [the judge] acts in the clear absence of all jurisdiction or performs an act

14    that is not judicial in nature." *Schnucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir.

15    1988) (citations omitted). To determine whether an act is judicial in nature, courts

16    in the Ninth Circuit consider whether "(1) the precise act is a normal judicial

17    function; (2) the events occurred in the judge's chambers; (3) the controversy

18    centered around a case then pending before the judge; and (4) the events at issue

19    arose directly and immediately out of a confrontation with the judge in [their]

20    official capacity." *Lund*, 5 F. 4th at 971 (cleaned up).

21        As for the first factor, Judge Keenan argues he blocked Benshoof to prevent

22    ex parte communication, which is a normal judicial function. Dkt. No. 39 at 8 (citing

23    Washington State Code of Judicial Conduct Rule 2.9A ("A judge shall not initiate,

ORDER - 8

permit[,] or consider ex parte communications")). The Court agrees that deciding

how to handle ex parte communications is a typical judicial act. *See Cossio v.

Tourtelot*, 725 F. App'x 406, 410 (7th Cir. 2018) ("[A judge] report[ing] an improper

ex parte contact . . . [is] a judicial function).

As to the remaining three factors, Judge Keenan argues Benshoof's

"comments centered around King County Superior Court No. 21-5-00680-6 SEA"

and "arose directly from Judge Keenan's acts in his official capacity presiding over

that case." Dkt. No. 39 at 8.

Although Benshoof's allegations are conclusory and vague, the Court finds

they describe ex parte communications because his comments relate to his pending

case before Judge Keenan, King County Superior Court No. 21-5-00680-6 SEA. Dkt.

No. 20 at 2 (Benshoof alleging that Judge Keenan "allowed, enabled, and facilitated"

perjury in King County Superior Court No. 21-5-00680-6 and "[w]hen [he] raised

valid concerns in his posts to [Judge Keenan's] Twitter and Facebook accounts,

[Judge Keenan] blocked him."); *id.* ¶¶ 13, 16, 18 (Benshoof describes his posts as

"questions and comments" "critical of [Judge Keenan's] judicial misconduct"). While

Benshoof does not attach or recite his posts verbatim in the complaint, the

descriptions he provides make clear that he was posting about the ongoing case.

Context also matters—Benshoof's decision to post on Judge Keenan's social

media pages, verses posting on his own account or another general audience forum,

suggests he wanted to communicate with Judge Keenan directly. Even though the

conduct at issue occurred online, instead of within Judge Keenan's chambers,

Benshoof's actions are akin to ex parte communications between a litigant and a

presiding judge about an ongoing case. Thus, even under these unusual

circumstances, the Court finds Judge Keenan's conduct judicial in nature. As such,

Judge Keenan, in his personal capacity, is entitled to judicial immunity from

Benshoof's claim for money damages.

With respect to Benshoof's claim for declaratory relief against Judge Keenan

in his personal capacity, it fails along the same lines as his claim for declaratory

relief against Judge Keenan in his official capacity. *See Just. Network Inc. v.*

*Craighead Cnty.*, 931 F.3d 753, 763 (8th Cir. 2019) (holding that judicial immunity

bars all actions except those for *prospective* declaratory relief); *Gilliam v. Watanabe*,

No. CV 20-00201 JMS-RT, 2020 WL 5223778, at *4 (D. Haw. Sept. 1, 2020), *aff'd*,

859 F. App'x 765 (9th Cir. 2021) (dismissing a plaintiff's action against a judge

where she failed to seek prospective declaratory relief).

Accordingly, the Court DISMISSES with prejudice Benshoof's claim against

Judge Keenan in his personal capacity.

### 3.4    The Court denies leave to amend.

"A pro se litigant must be given leave to amend [their] complaint, and some

notice of its deficiencies, unless it is absolutely clear that the deficiencies of the

complaint could not be cured by amendment." *Cato v. United States*, 70 F.3d 1103,

1106 (9th Cir. 1995); *Rodriguez v. Steck*, 795 F.3d 1187, 1188 (9th Cir. 2015) ("[The

Ninth Circuit has] held that a district court's denial of leave to proceed in forma

pauperis is an abuse of discretion unless the district court first provides a plaintiff

leave to amend the complaint or finds that amendment would be futile."); *Lucas v.*

1  *Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) ("Unless it is absolutely clear that no

2  amendment can cure the defect, however, a pro se litigant is entitled to notice of the

3  complaint's deficiencies and an opportunity to amend prior to dismissal of the

4  action.").

5      Here, it would be futile to allow Benshooof an opportunity to amend given

6  that the Eleventh Amendment and absolute judicial immunity block his underlying

7  claim.

8  **3.5    Staying the proceedings is unwarranted.**

9      Benshoof moves to stay the proceedings until he is released from King

10  County Jail. Dkt. Nos. 25, 28, 30. By way of background, after filing this action and

11  receiving IFP status, Benshoof was arrested for unrelated charges and booked into

12  custody at the King County Jail on July 3, 2024. Benshoof notified the Court that he

13  "[was] scheduled to be released . . . on . . . November 27, 2024." Dkt. No. 41 at 1.

14      A district court has discretion to stay proceedings in its own court. *Sullivan v.*

15  *Aurich*, No. C21-5433-TL-SKV, 2022 WL 2111113, at *1 (W.D. Wash. May 9, 2022)

16  (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In exercising this discretion,

17  the court weighs competing interests, including "(1) the damage that might result

18  from granting a stay; (2) the hardship a party may suffer in being required to move

19  forward; and (3) whether a stay would promote the orderly course of justice by the

20  simplification or complication of the issues." *Germack v. Dentists Ins. Co.*, No. C20-

21  0661-JCC, 2020 WL 6505020, at *1 (W.D. Wash. July 7, 2020) (citing *Lockyer v.*

22  *Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)).

23

**ORDER** - 11

1  Benshoof's motion is moot, however, because he has been released from

2  custody. *See* Dkt. No. 41. But even if the Court evaluates Benshoof's request on the

3  merits, it still fails. Benshoof argues that, in custody, he cannot effectively argue his

4  case. Over the course of three motions requesting the same relief, Benshoof claims

5  he was denied access to "the internet," "his own legal documents, files, records,

6  [and] evidence[,]" and his "computers and phone." Dkt. Nos. 25, 28.

7  The fact that a party is incarcerated does not always support staying a case.

8  *See Fader v. Berrada*, No. C21-5264 TSZ-TLF, 2021 WL 5967949, at *1 (W.D. Wash.

9  Nov. 24, 2021), *report and recommendation adopted in part,* No. C21-5264 TSZ,

10  2021 WL 5937687 (W.D. Wash. Dec. 16, 2021) ("[t]he interests of justice and equity

11  do not support staying this action" while the plaintiff was incarcerated because

12  "[t]here is no indication that plaintiff's access to the Court is currently restricted or

13  that plaintiff is unable to litigate this action *pro se*."). Here, Benshoof has filed

14  multiple motions since his arrest, showing that he has access to the Court. Dkt.

15  Nos. 25, 28, 30, 33, 37. He also filed a notice registering to electronically file and

16  receive electronic service. Dkt. No. 31. Therefore, Benshoof's actions contradict his

17  claims, and the Court finds no reason supported in the record to stay its decision.

18  The Court DENIES Benshoof's motions to stay, Dkt. Nos. 25, 28, 30.

19  Benshoof also moves for discovery, although most of his arguments relate to a

20  stay until he is no longer incarcerated. *See generally* Dkt. No. 33. Benshoof is not

21  entitled to discovery given that the Court is dismissing his case under Rule 12(b)(6).

22  Benshoof's motion for discovery, Dkt. No. 33, is DENIED.

23

**ORDER** - 12

**3.6    The motions to strike are moot.**

Judge Keenan twice moved to strike motions to stay by Benshoof "[t]o the extent that [they] ha[ve] been prepared and filed by a person not authorized to practice law"—specifically, Urve Maggitti. Dkt. Nos. 32 at 2 (asking the Court to strike Dkt. No. 30); Dkt. No. 33 (seeking to strike Dkt. No. 33).

Maggitti's role is unclear, as Benshoof signed both motions. Dkt Nos. 30 at 7; 33 at 11. It appears Maggitti seeks to act as a "Next Friend," but Maggitti does not demonstrate that they are qualified for next-friend status because they do not show "that they possess some significant relationship with, and is truly dedicated to the best interests of [Benshoof]." *Benshoof v. Ferguson*, No. 2:24-CV-00808-JHC, 2024 WL 3744257, at *1 (W.D. Wash. Aug. 9, 2024) (citing *Washington v. U.S. Congress*, C15-443-JCC, 2015 WL 2085607, at *2 (W.D. Wash. May 15, 2015)). However, because the Court is dismissing Benshoof's case on the merits, it need not delve into the issue further as it does not affect the outcome of this case.

Benshoof moves to strike the declaration of Ann M. Summers (Judge Keenan's then-attorney), arguing that his criminal cases have no essential or important relationship to his case against Judge Keenan. Dkt. No. 37. The Court disagrees—Benshoof's criminal matters are relevant given that he moved several times to stay this case until he was released from custody. Therefore, the Court DENIES Benshoof's motion to strike.

## 4.    CONCLUSION

In summary, the Court GRANTS Judge Keenan's motion to dismiss, Dkt. No. 39, and DISMISSES Benshoof's case with prejudice. The Court DENIES Benshoof's

motions to stay, Dkt. No. 25, 28, 30, motion for discovery, Dkt. No. 33, and motion to strike, Dkt. No. 37. The Clerk is directed to close this case.

Dated this 9th day of January, 2025.

Jamal N. Whitehead
United States District Judge

**ORDER** - 14

# Exhibit 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KURT BENSHOOF and BRIANA D.
GAGE,

               Plaintiffs,

      v.

MOSHE ADMON, DANIEL
AUDERER, JUSTIN BOOKER, FREYA
BRIER, CITY OF SEATTLE, NATHAN
CLIBER, ZACHARY COOK,
BENJAMIN COOMER, ANITA
CRAWFORD-WILLIS, JENNY
DURKAN, AMY FRANKLIN-BIHARY,
WILLIE GREGORY, OWEN
HERMSEN, DAVID KEENAN,
GABRIEL LADD, MAGALIE
LERMAN, MARY LYNCH, KATRINA
OUTLAND, JESSICA OWEN, BLAIR
RUSS, SPROUTS FARMERS
MARKET, KING COUNTY, SEATTLE
PUBLIC SCHOOLS, BIG 5 SPORTING
GOODS, CENTRAL COOP, PUGET
CONSUMERS CO-OP, FAYE CHESS,
ANN DAVIDSON, ADAM
EISENBERG, MATTHEW LENTZ,
JEROME ROACHE, SOHEILA
SARRAFAN, DAVID SULLIVAN, and
JORDAN WALLACE,

               Defendants.

CASE NO. 2:23-cv-1392

ORDER DECLARING PLAINTIFF
BENSHOOF A VEXATIOUS
LITIGANT

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 1

# 1. INTRODUCTION

This matter comes before the Court on Defendants' motions to declare Plaintiff Kurt Benshoof a vexatious litigant. Dkt. Nos. 250, 258. Benshoof opposes the motions and moves to stay the proceedings. Dkt. No. 257, 261. Because Benshoof fails to show a need for the requested stay and because Defendants have established that Benshoof uses abusive litigation tactics, the Court DENIES Benshoof's motion to stay and ENTERS a vexatious litigant order against him as set forth below.

# 2. BACKGROUND[1]

Over the last three years, Benshoof has filed ten cases in this district.[2] Eight of the ten cases have been dismissed. In each case, Benshoof proceeded pro se. Below, the Court briefly recounts each of the cases.

## 2.1 *Benshoof et al. v. Fauci et al.*, Case No. 2:22-cv-1281-LK.

On September 9, 2022, Benshoof filed a 295-page complaint and petition for an "emergency injunction." Dkt. No. 1. Benshoof sued nearly 70 defendants, including numerous employees of the City of Seattle, King County, Washington State, and the federal government, alleging constitutional violations arising from

---

[1] Within each subsection below, the record citations correspond to the docket of the case under discussion therein.

[2] Benshoof also moved twice for leave to file an amicus brief in *United States v. City of Seattle*, Case No. 2:12-cv-1282-JLR, in which the Honorable James L. Robart monitors the City of Seattle Police Department's compliance with its consent decree with the United States Department of Justice. Judge Robart denied Benshoof's motions both times.

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 2

his state-court family law proceedings. *Id.* Benshoof also objected to various COVID-19 policies involving indoor-masking requirements and vaccines. *Id.*

The Honorable Lauren King, United States District Judge, denied Benshoof's request for emergency injunctive relief. Dkt. No. 5. Judge King also found Benshoof's complaint deficient because it failed to comply with Federal Rule of Civil Procedure 8. Judge King granted Benshoof an opportunity to file an amended complaint within 30 days. *Id.* Because Benshoof failed to file an amended complaint by the deadline, Judge King dismissed his case without prejudice on October 31, 2022. Dkt. Nos. 7, 8.

### 2.2  *Benshoof v. Keenan et al.*, Case No. 2:23-cv-751-RAJ.

On May 22, 2023, Benshoof filed a case styled as a habeas petition challenging the state's child-custody determination. Dkt. No. 1. A couple of weeks later, on June 8, 2023, Benshoof moved for a temporary restraining order (TRO). Dkt. No. 15. On June 12, 2023, the Honorable Richard Jones, United States District Judge, denied Benshoof's TRO motion and dismissed the petition with prejudice, holding that the federal court lacked jurisdiction to relitigate Benshoof's interest in his parental rights. Dkt. No. 22.

Benshoof appealed. Dkt. No. 24. The Ninth Circuit ordered him to show cause why summary affirmance of the district court's judgment was not appropriate. Dkt. No. 26. Benshoof failed to respond, and the Ninth Circuit summarily affirmed the dismissal order finding "the questions raised in [Benshoof's] appeal so insubstantial as not to require further argument." Dkt. No. 27.

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 3

**2.3    *This lawsuit.***

On September 7, 2023, Benshoof moved to proceed *in forma pauperis* (IFP) and filed a proposed complaint. Dkt. No. 1. On his IFP application, Benshoof stated he received no money from any source for the last year even though his monthly expenses totaled over $1,000. *Id.* The Honorable Michelle L. Peterson, United States Magistrate Judge, ordered Benshoof to show cause why his IFP application should be granted considering the contradictions listed in his paperwork. Dkt. No. 4. Benshoof responded that he pays for monthly expenses through "personal lifetime savings" and Judge Peterson granted Benshoof's application to proceed IFP on September 19, 2023. Dkt. No. 8.

Benshoof's complaint in this lawsuit mirrors his claims in his prior case before Judge King, *Benshoof et al. v. Fauci et al.*, Case No. 2:22-cv-1281-LK. It spanned 280 pages, named over 42 defendants (many overlapping with those in the *Fauci* matter), and asserted nearly 40 causes of action covering family law issues, conspiracy theories, and COVID-19 masking policies at local stores. Dkt. No. 9. Benshoof also filed 2,034 pages of stand-alone exhibits. Dkt. No. 13. On September 27 and September 29, 2023, Benshoof filed two "emergency" motions for preliminary injunctions. Dkt. Nos. 14, 15. Benshoof then moved for three TROs on successive days between October 2–4, 2023. Dkt. Nos. 16, 20, 23. The Court denied all three motions, finding that Benshoof failed to establish that he was likely to succeed on the merits of any of his motions. Dkt. No. 29.

On October 31, 2023, the Court denied Benshoof's motions for injunctive relief as barred under the *Younger* abstention doctrine. The Court also identified

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 4

several deficiencies, including that it lacked jurisdiction over Benshoof's claim for declaratory judgment, his Section 1983 claims against private persons and immune parties failed as a matter of law, and his complaint violated Federal Rule of Civil Procedure 8(a). Dkt. No. 38 at 6–13. Accordingly, the Court ordered Benshoof to file an amended complaint. *Id.* at 16.

Benshoof's amended complaint failed to cure any of the deficiencies raised by this Court. His amended complaint was similarly sprawling in scope—spanning 184 pages, naming over 30 defendants, and asserting nearly 40 causes of action, raising the same family law issues, constitutional allegations, and conspiracy theories. Dkt. No. 245 at 1.

On June 28, 2024, after reviewing Defendants' motions to dismiss and conducting an independent review under 28 U.S.C. § 1915(e)(2)(i)–(iii), the Court dismissed Benshoof's first amended complaint with prejudice because he failed to state a claim upon which relief could be granted. *Id.* at 45–46. Specifically, the Court found that Benshoof's "long-winded filings" failed "to allege cognizable legal theories or factual assertions that show[ed] a facially plausible claim for relief." *Id.* at 2. The Court also denied Benshoof's fourth, fifth, and sixth TRO motions. Dkt. Nos. 92, 244.

### 2.4   *Benshoof et al. v. City of Shoreline et al.*, Case No. 2:24-cv-343-TL.

On March 11, 2024, Benshoof again moved for leave to proceed IFP and filed a proposed complaint involving grocery store masking policies during the COVID-19 pandemic. Dkt. No. 1. On April 2, 2024, the Honorable S. Kate Vaughan, United

States Magistrate Judge, found Benshoof's IFP application deficient because he indicated no income but listed monthly expenses of $1,630. Dkt. No. 8. Benshoof responded but failed to address this disparity, so Judge Vaughan again ordered him to show cause why his IFP application should be granted. Dkt. No. 11. Benshoof responded claiming to pay for his monthly expenses with credit cards and by "barter[ing] with members of his church[.]" Dkt. No. 12. Ultimately, Judge Vaughan granted Benshoof IFP status, and allowed his case to proceed. Dkt. No. 13.

On December 20, 2024, the Honorable Tana Lin, United States District Judge, granted the defendants' motions to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(c). Judge Lin dismissed Benshoof's complaint with leave to amend. Dkt. No. 85. On January 19, 2025, Benshoof filed an amended complaint, and in response, the defendants again moved to dismiss. Dkt. Nos. 93, 94. The motions to dismiss will be ripe for consideration in early March 2025.

## 2.5   *Benshoof v. Keenan*, Case No. 2:24-cv-382-JNW.

On March 15, 2024—four days after Benshoof filed his proposed complaint in *Benshoof et al. v. City of Shoreline et al.*, Case No. 2:24-cv-343-TL—Benshoof applied for IFP status to proceed with another proposed complaint. Dkt. No. 1. After two orders to show cause, Benshoof still glossed over the discrepancy between his total lack of income and monthly expenses. Dkt. No. 14. Judge Peterson recommended that this Court deny Benshoof's IFP status, and Benshoof objected, claiming that he pays his monthly expenses with credit cards and through bartering

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 6

1  with members of his church. Dkt. Nos. 14, 15. The Court granted Benshoof IFP on

2  July 30, 2024. Dkt. No. 19.

3      In his complaint, Benshoof alleged that King County Superior Court Judge

4  David Keenan facilitated perjury in the parentage action between him and the

5  mother of his child. Dkt. No. 20. Benshoof made a series of social media posts on

6  Judge Keenan's public Twitter and Facebook pages about the case. Dkt. No. 44 at

7  1–2. In response, Judge Keenan blocked Benshoof from his social media accounts for

8  engaging in ex parte communications with the court. *Id.* On January 9, 2025, this

9  Court dismissed Benshoof's case with prejudice based on judicial immunity. *Id.*

### 2.6    *Benshoof v. Ferguson et al.*, Case No. 2:24-cv-808-JHC.

11      On June 7, 2024, preceding pro se but not IFP, Benshoof sued King County

12  Superior Court Judge Marshall Ferguson, as well as several attorneys who have

13  represented parties opposite Benshoof in prior suits—Blair Russ, Jessica Skelton,

14  Michael Tracy, and Sarah Turner. Dkt. No. 1. Benshoof also named the

15  undersigned, Judge Jamal Whitehead, and an unnamed clerk for this Court. *Id.* In

16  his 91-page complaint, Benshoof alleged the defendants committed witness

17  tampering and suborned perjury. *Id.* at 39–65. He also alleged this Court failed to

18  adjudicate his TRO motions in *Benshoof v. Admon*, Case No. 2:23-cv-1392-JNW. *Id.*

19  at 62–65.

20      On August 9, 2024, the Honorable John H. Chun, United States District

21  Judge, granted Defendant Skelton's motion to dismiss, dismissed Benshoof's claims

22  against Skelton without prejudice, and granted Benshoof leave to amend his

23

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 7

1  complaint with respect to the claims against Skelton. Dkt. No. 40. On November 14,

2  2024, Judge Chun granted Defendant Judge Ferguson's motion to dismiss and

3  dismissed all claims against Judge Ferguson with prejuidce based on judicial

4  immunity. Dkt. No. 51. Benshoof moved for leave to amend his complaint, which

5  Judge Chun denied. Dkt. Nos. 57, 61. Judge Chun then dismissed with prejuidce all

6  claims against Skelton because Benshoof failed to file a proposed amended

7  complaint as required by Local Civil Rule 15(a). *Id.* On July 10, 2025, Benshoof

8  again moved for leave to file an amended complaint. The motion remains pending.

9  Dkt. No. 63.

10

11  **2.7**    ***In re: Kurt Benshoof*, Case No. 2:24-mc-43-JNW.**

12      On July 14, 2024, Benjamin Blanchard filed a proposed habeas petition on

13  behalf of Kurt Benshoof. Dkt. No. 1. Because Blanchard did not establish any kind

14  of significant relationship with Benshoof, as required of a proper "next friend" who

15  can pursue a habeas petition on behalf of a detained person, this Court dismissed

16  his petition and closed the case on August 30, 2024. Dkt. No. 10.

17  **2.8**    ***Benshoof v. Warden*, Case No. 2:24-cv-1110-JNW.**

18      Three days after Blanchard's filing, on July 17, 2024, Benshoof petitioned for

19  habeas corpus under 28 U.S.C. § 2241, challenging his pretrial detention at King

20  County Correctional Facility in Seattle, Washington. Dkt. No. 12. Judge Vaughan

21  recommended that this Court dismiss Benshoof's petition based on two procedural

22  deficiencies: (1) "the claims asserted in [Benshoof's habeas] petition lack sufficient

23  clarity and factual support for the Court to conclude that *Younger* abstention is

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 8

1
2
3
4
5
6
7
8

. . . inappropriate in the circumstances of this case[;]" and (2) Benshoof "does not show that he presented any of his federal habeas claims to the Washington state trial and appellate courts in his ongoing criminal proceedings, and he offers no explanation as to why exhaustion should not be required[.]" Dkt. No. 22 at 9–10. Accordingly, on January 17, 2025, this Court dismissed Benshoof's petition on procedural grounds as barred by the doctrine of *Younger* abstention and because Benshoof failed to exhaust state court remedies. Dkt. No. 28. Benshoof appealed even though this Court denied a certificate of appealability. Dkt. Nos. 32, 33.

9
10

**2.9** *City of Seattle v. Benshoof*, **Case No. 2:24-mc-57-JNW.**

11
12
13

On September 9, 2024, Benshoof tried to remove his criminal cases from state court to this Court. Dkt. No. 1. Because Benshoof failed to pay the filing fee or move for leave to proceed IFP, this Court dismissed his case on January 8, 2025. Dkt. Nos. 4, 5.

14
15

**2.10** *State of Washington v. Benshoof*, **Case No. 2:24-mc-60-JNW.**

16
17
18
19
20
21

On September 24, 2024, Benshoof again attempted to remove his Seattle Municipal Court criminal cases to this Court under 28 U.S.C. § 1443. Dkt. No. 1. This Court found that Benshoof met none of the requirements for removal to federal court; thus, Benshoof's proposed removal was defective. Dkt. No. 16. This Court terminated the case for lack of jurisdiction, *id.* at Dkt. No. 16, and Benshoof appealed to the Ninth Circuit, *id.* at Dkt. No. 17.

22
23

1

## 3. DISCUSSION[3]

2

### 3.1   Staying the proceedings is unwarranted.

3

4

To begin, Benshoof moves to stay this Court's decision on Defendants' motion

for a vexatious litigant order until he is released from King County Jail. Dkt. No.

5

257. A stay is unwarranted.

6

A district court has discretion to stay proceedings in its own court. *Sullivan v.*

7

*Aurich*, No. C21-5433-TL-SKV, 2022 WL 2111113, at *1 (W.D. Wash. May 9, 2022)

8

(citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In exercising this discretion,

9

the court weighs competing interests, including "(1) the damage that might result

10

from granting a stay; (2) the hardship a party may suffer in being required to move

11

forward; and (3) whether a stay would promote the orderly course of justice by the

12

simplification or complication of the issues." *Germack v. Dentists Ins. Co.*, No. C20-

13

0661-JCC, 2020 WL 6505020, at *1 (W.D. Wash. July 7, 2020) (citing *Lockyer v.*

14

*Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)).

15

That a party is incarcerated does not always support staying a case. *See*

16

*Fader v. Berrada*, No. C21-5264 TSZ-TLF, 2021 WL 5967949, at *1 (W.D. Wash.

17

Nov. 24, 2021), *report and recommendation adopted in part*, No. C21-5264 TSZ,

18

2021 WL 5937687 (W.D. Wash. Dec. 16, 2021) ("The interests of justice and equity

19

do not support staying this action" while the plaintiff was incarcerated because

20

"[t]here is no indication that plaintiff's access to the Court is currently restricted or

21

22

23

---

[3] Within each subsection that follows, the record citations correspond to the docket in this case.

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 10

1    that plaintiff is unable to litigate this action pro se."). Benshoof has submitted

2    multiple filings since his arrest, showing that he has access to the Court. Dkt. Nos.

3    261, 263. He also filed a notice registering to electronically file and receive

4    electronic service. Dkt. No. 262. Therefore, Benshoof's actions contradict his claims,

5    and the Court finds no reason supported in the record to stay its decision.

6        The Court thus DENIES Benshoof's motion to stay. Dkt. No. 257.

7    **3.2    Legal standard for a bar order.**

8        The All Writs Acts, 28 U.S.C. § 1651(a), provides district courts with the

9    inherent power to enter pre-filing orders against vexatious litigants. *De Long v.*

10   *Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) ("Under the power of 28 U.S.C. §

11   1651(a), enjoining litigants with abusive and lengthy histories is one such form of

12   restriction that the district court may take."). Although, such orders should be rare,

13   "[f]lagrant abuse of the judicial process cannot be tolerated because it enables one

14   person to preempt the use of judicial time that properly could be used to consider

15   the meritorious claims of other litigants." *Id.* at 1148.

16       In the Ninth Circuit, a vexatious litigant order may be entered when (1) the

17   litigant has received notice and a chance to be heard before the order is entered, (2)

18   there is an adequate record for review, (3) the litigant's actions are frivolous or

19   harassing, and (4) the vexatious litigant order is "narrowly tailored to closely fit the

20   specific vice encountered." *De Long*, 912 F.2d at 1147–48; *Molski v. Evergreen*

21   *Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007). The first two factors are

22   procedural, while the "latter two factors . . . are substantive considerations . . .

23

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 11

1
2
3

[that] help the district court define who is, in fact, a 'vexatious litigant' and construct a remedy that will stop the litigant's abusive behavior while not unduly infringing the litigant's right to access the courts." *Molski*, 500 F.3d at 1058.

### 3.3  Benshoof is a vexatious litigant.

#### 3.3.1  Notice and opportunity to be heard.

4
5
6
7
8
9
10
11
12
13
14
15

The first factor the Court must consider is whether the litigant accused of vexatious behavior has been given fair notice of the possibility that they might be declared a vexatious litigant. *De Long*, 912 F.2d at 1147. And an opportunity to oppose the order before it is entered. *Molski*, 500 F.3d at 1058. The court need not hold an in-person hearing for this factor to be met. *See Gavin v. City & Cty. of S.F.*, No. 15-CV-05202-EMC, 2016 WL 126937, at *2 (N.D. Cal. Jan. 12, 2016); *see also Reddy v. MedQuist, Inc.*, No. 12-cv-1324-PSG, 2012 WL 6020010, at *3 (N.D. Cal. Dec. 3, 2012) ("The requirement that the plaintiff receive an opportunity to be heard does not include an oral hearing; the opportunity to brief the issue fully satisfies due process requirements.").

16
17

This factor is met, as Benshoof had an opportunity to—and did in fact—oppose Defendants' motion for a vexatious litigant order.

18
19

#### 3.3.2  Adequate record for review.

20
21
22
23

The second factor considers whether the district court has created an adequate record for review, including a listing of all the cases and motions that lead the district court to conclude that a vexatious litigant order is needed. *De Long*, 912 F.2d at 1147 (citing *Martin–Trigona v. Lavien*, 737 F.2d 1254, 1260 (2d Cir. 1984)).

1    At a minimum, the record should show that the litigant's activities are numerous or

2    abusive. *Id.*

3          The Court has listed and discussed all the actions (ten, total) that Benshoof

4    has filed in this district in the past three years alone. A review of them reveals that

5    eight out of the ten cases have been dismissed either for lack of jurisdiction or

6    failure to state a claim.

7          ### 3.3.3    Frivolous or harassing filings.

8          The third factor "gets to the heart of the vexatious litigant analysis," *see*

9    *Molski*, 500 F.3d at 1059, and requires the district court to look to "both the number

10   and content of the filings as indicia" of the frivolousness of the litigant's claims, *De*

11   *Long*, 912 F.2d at 1148. "An injunction cannot issue merely upon a showing of

12   litigiousness. The plaintiff's claims must not only be numerous, but also be patently

13   without merit." *Molski*, 500 F.3d at 1059.

14         Benshoof stands out as a particularly difficult litigant, not only because of his

15   prolific filings but also because of his abusive litigation tactics. For example, in this

16   case, Benshoof sought six meritless motions for temporary restraining orders, as

17   well as duplicative "emergency" motions for preliminary injunctions. *See* Dkt. Nos.

18   14, 15, 16, 20, 23, 129, 158. Because they were filed as TROs, the Court, at least

19   initially, handled them on an expedited basis, as required by the civil rules until it

20   become clear that these were meritless filings. Handling motions for expedited

21   relief, even those lacking in substance, is a considerable drain on the Court's

22   resources.

23

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 13

Benshoof also has a history of repeatedly suing the same people or entities—essentially, using multiple cases to harass them. In this Court alone, Benshoof has sued his former romantic partner, Jessica Owen, four times and Owen's current partner, Magalie Lerman, three times. He also routinely sues the judges presiding over his cases, if displeased by the outcome of a case or ruling. Perhaps the best example is Benshoof's suits against King County Superior Court Judge David Keenan. After Judge Keenan presided over a parentage action between Benshoof and Owen, Benshoof has sued Judge Keenan *four* times in this district. Similarly, he often sues any lawyer on the opposing side of his cases; most notably, Benshoof sued Owen's counsel, Blair Russ and Nathan Cliber. Finally, Benshoof uses service of process to harass his named defendants by refusing to accept waivers of service and, instead, utilizing their home addresses. From this, the Court finds that Benshoof is not acting in good faith.

This is not the first court to find Benshoof vexatious. On March 31, 2023, King County Superior Court Judge Marshall Ferguson determined that Benshoof is a vexations litigant based on his "pattern of abusive litigation and weaponization of the [King County Superior Court] system[.]" Dkt. No. 13-2 at 111–117; *see also Benshoof v. Cliber et al.*, Case No. 22-2-15958-8 (King Cnty. Sup. Ct. Feb. 17, 2023), Dkt. No. 177. Judge Ferguson imposed certain filing restrictions on Benshoof, including requiring him to move for leave to proceed with any future action filed against Cliber, Owen, Lerman, and Owen's friend Owen Hermsen, and to submit a copy of the abusive litigant order with any complaint. *Id.* On March 1, 2024, Judge

1    Ferguson entered a Contempt Order for violating the filing restrictions, in part

2    based on his filings in federal court. Dkt. No. 129-3.

3    　　　　Finally, other sanctions, such as monetary fines, would be too punitive and

4    not dissuade Benshoof from continued filings given that his IFP requests have

5    shown that he has limited financial resources.

6    　　　　So the Court concludes that Benshoof is a vexatious litigant and that a bar

7    order is the most reasonable course here.

8    ### 3.3.4    Narrowly tailored.

9    　　　　The fourth and final factor considers whether the pre-filing order to be

10    entered is narrowly tailored to the vexatious litigant's wrongful behavior. *Molski*,

11    500 F.3d at 1061. "Narrowly tailored orders are needed 'to prevent infringement of

12    the litigator's right of access to the courts.'" *De Long*, 912 F.2d at 1148 (citing *Sires*

13    *v. Gabriel*, 748 F.2d 49, 51 (1st Cir. 1984)). The pre-filing restriction must fit the

14    plaintiff's specific practices. *See, e.g.*, *Wood v. Santa Barbara Chamber of Com., Inc.*,

15    705 F.2d 1515, 1525 (9th Cir. 1983) (the injunction must describe in reasonable

16    detail the act or acts sought to be restrained).

17    　　　　The specific vice the Court seeks to address are Benshoof's serial, and

18    sometimes contemporaneous, filings of lawsuits addressing the same topics and

19    against the same defendants. Benshoof has brought multiple lawsuits that have

20    been dismissed for lack of jurisdiction or failure to state a claim. He has used these

21    lawsuits to harass the defendants through repeated actions and abusive tactics like

22    frivolous motions for temporary restraining orders.

23

To remedy or prevent similar conduct in the future by Benshoof, Defendants request that the Court require him to comply with Judge Ferguson's vexatious litigant order: Benshoof must obtain advance leave from the forum court if he seeks relief from (1) any other civil or criminal proceeding to which he is a party; (2) COVID public health orders; (3) any judicial officer's decision; or (4) any active bench warrants issued by any court. Dkt. No. 250 at 14; *see also* Dkt. No. 13-2 at 111–117 (Order Restricting Abusive Litigation of Kurt Benshoof, signed by Judge Ferguson on March 31, 2023). Defendants also ask that the Court make Benshoof certify that he has complied with these requirements, identify all past or pending cases initiated against the same defendants, concisely state the past disposition or present posture of those cases, and succinctly describe why the proposed new action involves different factual allegations; and demonstrate that the new filing is not frivolous or in bad faith. Dkt. No. 250 at 14. Finally, Defendants ask that the Court order Benshoof to accept waivers of service or utilize professional process servers in any action found meritorious. Dkt. No. 258 at 1–2.

The Court finds these terms generally agreeable but unlikely to cure one of Benshoof's most disruptive tactics—the length of his filings. Further, Judge Ferguson's order cannot constrain Benshoof in a federal forum and there is no need for this Court to address or reimpose the terms of Judge Ferguson's when it comes to Benshoof's state court filings. Lastly, the Court will not impose restrictions on how Benshoof accomplishes service of process beyond the applicable civil and local rules. Because the Court imposes prefiling restrictions, this will prevent Benshoof for using service of process as a harassing technique.

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 16

1    Accordingly, the Court refines the proposed terms and imposes the following

2 pre-filing order:

3  • Benshoof is prohibited from filing any pro se civil action in the Western

4   District of Washington without leave from the Court. To obtain leave from

5   the Court, Benshoof must submit a declaration signed under the penalty of

6   perjury that identifies all past or pending cases initiated against the same

7   defendant(s), concisely states the past disposition or present posture of those

8   cases, succinctly describe why the proposed new action involves different

9   factual allegations, and demonstrate that the new filing is not frivolous or in

10   bad faith. This declaration may not exceed ten pages of typed material.

11  • The Court will deny leave to proceed with a civil action upon finding that it

12   suffers from the defects outlined above, or that it is otherwise without merit,

13   without issuing an order to show cause.

14  • The Clerk will initially file all Benshoof's future pro se complaints and

15   motions for in forma pauperis status in a miscellaneous case number

16   specifically designated for this purpose pending the Court's review of each

17   such complaint and motion.

18  • The Clerk will not issue summons in any pro se action of Benshoof's without

19   approval of the Court.

20  • This pre-filing screening will not apply to any filing made in this district

21   where Benshoof is represented by counsel. Any such complaint accompanied

22   by a filing fee may receive a civil case number.

23

# 4. CONCLUSION

In sum, Defendants' motion to declare Plaintiff Kurt Benshoof a vexatious litigant is GRANTED in part and Plaintiff's motion to stay is DENIED.

Dated this 11th day of February, 2025.

Jamal N. Whitehead
United States District Judge

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 18